# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAH MACHINE COMPANY and ANNA HOZJAN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 18-CV-02559 ) ) Judge John J. Tharp, Jr. |
| UNITED OF OMAHA LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The underlying claim in this case seeks the payment of death benefits pursuant to an ERISA plan. The defendant insurer denied the claim for benefits and the plaintiffs sought no further relief for more than a year, until they filed this law suit. The insurer maintains that the suit must be dismissed because one of the plaintiffs, the employing company, has no standing to pursue a claim for benefits under the plan, and because the other plaintiff (the deceased employee's spouse) failed to pursue the administrative remedies that the plan provided. Concluding that the insurer is correct on both counts, the Court grants the motion and dismisses the complaint.

## BACKGROUND

The facts relating to this motion (though not to the underlying claim) are undisputed. On November 1, 2016, defendant United of Omaha Life Insurance Company ("Omaha") issued two group life insurance policies to plaintiff MAH Machine Company ("MAH") for the benefit of its employees; together they comprise an employee welfare benefit plan ("Plan") under ERISA. *See* 29 U.S.C. 1002(1) and (3). Policy GLUG-B39N provided a basic death benefit of $25,000 for all eligible employees; Policy GVTL-B39N allowed eligible employees to elect to be insured for

additional death benefits subject to the payment of additional premium. Martin Hozjan, spouse of plaintiff Anna Hozjan, elected additional coverage of $150,000 under the GVTL policy.

Two days later, on November 3, 2016, Mr. Hozjan died of cancer. When Ms. Hozjan submitted claims under the Omaha policies, Omaha denied the claims on the ground that Mr. Hozjan was not eligible because he was not "Actively Working" as of the date the policies went into effect. According to Omaha, Mr. Hozjan had been in hospice care—and therefore, not working—since October 1, 2016.

Omaha advised Ms. Hozjan of the denial of her claims by letter dated February 22, 2017. In addition to informing Ms. Hozjan about the ground for the denial of the claims, the notice letter advised Ms. Hozjan that she could appeal the denial, stating (in relevant part):

> In the event you wish to appeal this denial, you have the right to request a review by the Life Clams Department. This request for an appeal must be submitted within 60 days from receipt of this notice. The request should include the following information . . . .
>
> In addition . . . please submit any written comments, documents, records, and other information you may have related to the claim. Upon receipt, we will review and take into account all information submitted related to the claim without regard to whether such information was submitted or considered in the initial claim decision. . . .
>
> We will notify you of our appeal decision within 60 days after receipt of a timely appeal request . . . .
>
> Upon request and free of charge, you are entitled to reasonable access to, and copies of, all documents, records, and other information relevant to the claim. …
>
> If your plan is governed by the Employee Retirement Income Security Act (ERISA), you have the right to bring a civil action suit once all administrative rights to review have been exhausted. . . .

Compl. Ex. 3, ECF No 1-3, at 2.

Although the policies provided the right to appeal the denial of the claims, Ms. Hozjan did not do so. She sought no further remedy against Omaha until some 14 months later, in April 2018, when she and MAH filed the complaint in this case alleging that Mr. Hozjan had been actively working until November 2, 2016 and that Omaha had wrongfully denied Ms. Hozjan's claims as a beneficiary of the Plan. Anticipating the assertion of a lack of exhaustion defense, the complaint alleges that Omaha's notice failed to provide information about how to perfect her claim required by 29 C.F.R. § 2560.503-1(g)(1)(iii). The complaint also alleges that administrative appeal was futile and therefore excused.

## DISCUSSION

Before turning to the primary issue presented by Omaha's motion—whether its denial notice provided the requisite information to Ms. Hozjan—matters may be simplified by confirming Omaha's initial argument: that MAH lacks standing to contest the denial of plan benefits. Omaha argues that claims to recover benefits or to enforce rights under the terms of the Plan can be brought only by a plan participant or beneficiary. 29 U.S.C. § 1132(a)(1).[1] MAH, the company that established the plan for its employees, is neither; accordingly, it is not permitted to sue to obtain benefits under the Plan. As Omaha points out in its Reply brief, the plaintiffs do not respond at all to this argument, effectively conceding the point. For the balance of this discussion, then, MAH may be disregarded; it is only Ms. Hozjan who is authorized to submit claims for plan benefits under the Omaha policies.

---

[1] Plan fiduciaries are also permitted to bring suit for limited forms of relief, *see* 29 U.S.C. § 1132(a)(2) and (3), but it is not alleged that MAH is a fiduciary of the Plan. *See* 29 U.S.C. § 1002(21)(A) (defining a plan fiduciary in terms of ability to exercise discretionary control over plan management, assets, or administration).

The Seventh Circuit has repeatedly confirmed that exhaustion of administrative remedies provided by a plan is a prerequisite to the assertion of an ERISA claim in court. *See, e.g.*, *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011) ("because ERISA directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, we have interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute"); *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000) ("it has long been recognized in this Circuit that the intent of Congress is best effectuated by granting district courts discretion to require administrative exhaustion"). The exhaustion requirement serves many important ends: it promotes informal and efficient non-judicial resolution of disputes; reduces the number of frivolous lawsuits; and promotes consistent treatment of claims. *Edwards*, 639 F.3d at 360-61. Even if unsuccessful in resolving a dispute, the administrative exhaustion requirement helps to narrow the scope of the dispute and to ensure development of a complete record in advance of the initiation of a law suit. *Id.* at 631.

Ms. Hozjan does not dispute that ERISA claimants generally must exhaust any administrative remedies a plan requires before filing suit in court. Nor is there any dispute that the Plan policies at issue in this case provided further remedies to Ms. Hozjan following the denial of her claims. Each policy included a provision providing the right to appeal by requesting a review by Omaha's Life Claims Department within 60 days of the denial of the claims for benefits. It is undisputed that Ms. Hozjan did not initiate that appeal process at any time within 60 days after receipt of the denial letter (or thereafter) and so failed to exhaust her administrative remedies.

The complaint alleges, however, that Ms. Hozjan's failure to appeal is excused because asking Omaha to review its own decision would have been futile. Futility can, it is true, excuse a

4

failure to exhaust administrative remedies, but Ms. Hozjan identifies no authority for the proposition that a requirement to seek further review of a denial of benefits from the plan administrator who denied the claim in the first place is a futile gesture. "In order to come under the futility exception to the exhaustion requirement a plaintiff must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996). Seeking further review and reconsideration from a decisionmaker is not certain to fail; to accept that contention one would have to conclude, without an evidentiary basis, that plan administrators and claims adjudicators uniformly act in bad faith. That assumption is unwarranted, to say the least.[2]

Further, and as Omaha points out, the structural conflict which Ms. Hozjan's argument posits is not sufficient to excuse the exhaustion requirement because the exception would then swallow the rule. Plan insurers generally serve as claim adjudicators for the plan; if that role rendered further review by the insurer futile, exhaustion would be routinely excused. Recognizing as much, numerous opinions from the Seventh Circuit take the view that exhaustion is not futile simply because administrators are vested in their original rulings. *See*, *e.g.*, *Stark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004) (rejecting futility claim based on administrator's opposition to claim because "if claimants were allowed to skip the administrative procedure, it is hard to imagine

---

[2] It bears noting that providing a mechanism to ask an adjudicator to reconsider a decision, or to alert the adjudicator to an error in its decision, is a standard feature of adjudicative procedure. *See*, *e.g.*, Fed. R. Civ. P. 59(e); Fed. R. Crim. P. 33. It makes good sense to provide plan administrators and fiduciaries, just like courts, with the opportunity to correct their own mistakes before taking the matter another adjudicator. *See Sosebee v. Astrue*, 494 F.3d 583, 589 (7th Cir. 2007) ("Rule 59(e) motions offer district courts an opportunity to correct errors that may have crept into the proceeding, before the case leaves the district court for good.").

that these factors would not be present in almost all cases"); *Ames v. Am. Nat. Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999) ("the fact that the individual named defendants would be the people reviewing the plaintiffs' administrative appeals is not enough to relieve plan participants of the duty to exhaust remedies"); *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir.1997) (absence of neutral arbitrator not determinative of futility of administrative remedy); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 460 (7th Cir.1986) (same). In light of this precedent, Ms. Hozjan's futility contention is, well, futile. That her response brief does not defend the complaint's assertion of futility effectively concedes this point too.

That leaves the question of whether Omaha's letter provided the information set forth in 29 C.F.R. § 2560.503-1(g)(1). As relevant here, that regulation provides:

> (g) Manner and content of notification of benefit determination.
>
> (1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. … The notification shall set forth, in a manner calculated to be understood by the claimant—
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review; …

Failure "to establish or follow claims procedures consistent with the[se] requirements" vitiates the exhaustion requirement, 29 C.F.R. § 2560.503-1(l), but substantial compliance with these requirements suffices. *Schneider v. Sentry Group Long Term Disability Plan,* 422 F.3d 621, 627 (7th Cir. 2005); *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 662 (7th Cir. 1997).

Ms. Hozjan maintains that the notice she received from Omaha was deficient because it did not "include a description of any additional material or information necessary … to perfect her claim." Response, ECF No. 15, at 3. She reads this component of the notice regulation to require Omaha to provide an itemization of the specific evidence that might be relevant "to establish Martin was actively employed on November 1, 2016." *Id*. More specifically, she contends that Omaha failed to provide adequate notice because it did not advise her "that time/pay records or other evidence of active work should be submitted, the nature of Martin's work and the physical, mental requirements of his job" along with a description of his physical condition and the nature of the hospice care he was receiving as of November 1, 2016." *Id*. [sic]. In other words, Ms. Hozjan maintains that Omaha was required to identify the evidence she would need to submit to win the appeal.

But "perfect the claim" is not synonymous with "win the appeal." *Terry v. Bayer Corp.*, 145 F.3d 28, 39 (1st Cir.1998). To "perfect" a claim means "[t]o take all legal steps needed to complete, secure, or record" the claim. BLACK'S LAW DICTIONARY (9th ed.). So understood, the requirement to provide notice "of any additional material or information necessary for the claimant to perfect the claim" is a requirement to advise the claimant whether the administrator needs any additional information in order to effect further review; it is not an obligation to inform the claimant of what she evidence she needs to ensure the appeal's success. As the Fourth Circuit has explained in making precisely this point, "[t]hat is not [the insurer's] role as a fiduciary. [The

7

insurer] must treat each claimant with procedural fairness, but, because it must also guard against improper claims, it is not its duty to affirmatively aid claimants in proving their claims." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 236 (4th Cir.1997) ("Ellis has somehow … come to the erroneous belief that MetLife is under an obligation to inform her of what she needs to tell MetLife in order to obtain disability benefits.").

In *Brehmer*, the Seventh Circuit rejected the same "tell-me-what-evidence-I-need-to-win" argument Ms. Hozjan advances here. In that case, a plan administrator denied pension benefits to a former employee, who argued that the notice of denial she received was inadequate because it failed to tell her "what material or information would be necessary to rebut [the administrator's] findings and perfect her claim." *Id*. at 661. Rejecting that premise, the Seventh Circuit held that the requirement of notice regarding any information required "to perfect the claim" applies only "when more information is needed for a plan administrator to review the denial of a claim." *Id*. at 661–62. The question under § 2560.503-1(g)(1)(iii)'s notice requirement is not whether there is additional evidence to rebut the administrator's reason for denying the claim, but "whether [the claimant] was supplied with a statement of reasons that under the circumstances of the case permitted a sufficiently clear understanding of the administrator's decision to permit effective review." *Id*. at 662. *See also Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003) (adequacy of notice of denial is measured by "whether the beneficiary was provided with a statement of reasons that allows a clear and precise understanding of the grounds for the administrator's position sufficient to permit effective review"); *Des Armo v. Kohler Co. Pension Plan*, No. 13-C-436, 2014 WL 3860049, at *15 (E.D. Wis. Aug. 6, 2014) (dismissing claim where notification letter advised claimant that denial "was based not on a lack of evidence, but on the presence of evidence which indicated that claimant" was not eligible to receive benefits);

*Kirkpatrick v. Liberty Mut. Grp., Inc.*, 856 F. Supp. 2d 977, 992–93 (S.D. Ind. 2012) (rejecting argument that notice was deficient because insurer failed to identify additional medical information that would be needed to approve claim; § 2560.503–1(g)(1)(iii) "inapplicable" where "there is no indication that the Defendants required more information to review" the claim); *Hagopian v. Johnson Fin. Grp., Inc. Long-Term Disability Plan, an ERISA Plan*, No. 09-C-926, 2010 WL 3808666, at *10 (E.D. Wis. Sept. 23, 2010) (notice not deficient where insurer did not need additional information to process claim); *Tormey v. Gen. Am. Life Ins. Co.*, 973 F. Supp. 805, 814 n.13 (N.D. Ill. 1997) ("under *Brehmer* … subsection (3) does not apply because [insurer] needed no additional information to reach its determination that Tormey had a preexisting condition").[3]

Omaha did not require any additional information from Ms. Hozjan to review her claims and so the requirement to advise her of any additional information to perfect her claim had no bearing. Here, as in *Brehmer*, the claims administrator denied the claim based on affirmative reasons and evidence clearly identified in the notice letter, not because it was "'unperfected' due to missing information." *Brehmer*, 114 F.3d at 662; *see also, e.g., Cole v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 101 F. App'x 840, 841 (1st Cir. 2004) (rejecting argument that administrator violated the notice requirements because it did not inform claimant of the specific documentation or information needed to "rehabilitate" his claim because Central States never

---

[3] The contention that § 2560.503-1(g)(1)(iii) requires an itemization of evidence needed to convince Omaha to reverse its denial of the claim is also in tension with the text of the regulation. which plainly contemplates that there may be no additional information necessary to "perfect the claim." The regulation requires notification of "any" such information, a formulation that allows for the possibility that there is no such information. But that would not be the case if the regulation required a description of evidence that, if produced, might allow a claimant to win an appeal; it would always be possible to identify hypothetical evidence that, if it materialized, would rebut or undermine the evidence on which the claim decision had been based.

suggested that more information was needed to perfect the claim and allow for adequate review; "Central States did not reject Cole's claim as defective; it only found that his arguments did not refute the opinion of its medical consultant."). Omaha's denial notice informed Ms. Hozjan that her claims were denied because specific evidence (which was identified in the notice) showed that Mr. Hozjan was not "actively working" when the policies became effective but rather was in hospice care. The denial letter provided the policy definitions of what constitutes "actively working" ("performing the normal duties of his or her regular job on a regular and continuous basis 30 or more hours each week") and cited the fact that Mr. Hozjan had been in a hospice facility for a month before the policies became effective as the basis for its determination that he had not been actively working. It recounted the sources of its information—Mr. Hozjan's physician, the hospice facility—and identified the physician who had referred Mr. Hozjan to the hospice center. This information plainly provided Ms. Hozjan with "a sufficiently clear understanding of the administrator's decision to permit effective review." *Brehmer*, 114 F.3d at 662.

No more was required. It nevertheless bears noting that the letter did effectively advise Ms. Hozjan about what sort of evidence she would need to present to challenge Omaha's initial determination that Mr. Hozjan was not actively working for MAH on November 1, 2016—namely, evidence that would show that, despite his placement in a hospice facility a month earlier and his death from cancer two days later, he was performing his normal duties on a nearly full-time basis (or, perhaps contesting the evidence that he was in hospice care as of November 1).[4] So even if Ms. Hozjan were correct, and the regulation required Omaha to identify the sort of evidence necessary to win her appeal, Omaha's notice substantially complied with that requirement.

---

[4] That sounds like a tall order, but the Court's ruling is not predicated on any assessment of the prospects of an appeal's success. The issue here is not whether Ms. Hozjan could marshal such evidence but whether Omaha was required to identify it for her. It was not.

*Brehmer*, 114 F.3d at 662; *see also, e.g.*, *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 461 (6th Cir. 2003) (rejecting argument that notice of denial was inadequate due to administrator's failure to advise claimant of specific additional evidence required because explanation of denial of benefits made clear that affirmative evidence to rebut the administrator's finding would be required to prevail on appeal); *Cole*, 101 F. App'x at 841 ("It was also obvious from the alternative disposition of the February 27, 1991, bill as untimely submitted that, in order to successfully appeal that determination, Cole would have to prove that he submitted it within the limitations period. His contention that he did not attempt to do so because the notices failed to advise exactly what he needed to produce to prevail on appeal is not an adequate excuse."); *Myers v. Bricklayers & Masons Local 22 Pension Plan*, No. 3:13-CV-75, 2014 WL 3530962, at *4 (S.D. Ohio July 15, 2014) (Plan administrator substantially complied with ERISA requirements concerning notice of an adverse benefit determination where the notice advised that claim was being denied because claimant was not an "Active Participant" in Plan, cited the relevant Plan provisions, and informed claimant how to appeal).

Finally, as to Ms. Hozjan's argument that Omaha improperly required her to determine whether ERISA governed the Plan in order to assess whether she had a right to initiate a law suit after exhausting her administrative remedies, the Court agrees with Omaha that, at the very least, it substantially complied with the requirement to advise Ms. Hozjan of her right to bring suit under ERISA. And in any event, it suffices to say that Ms. Hozjan cannot have been prejudiced by inadequate notice that she had the right to sue *after* having exhausted administrative remedies when she did not exhaust her administrative remedies.[5] Whether Omaha improperly included the

---

[5] *Tomczyscyn v. Teamsters, Local 114 Health and Welfare Fund*, 590 F. Supp. 211 (E.D. Pa. 1984), on which Ms. Hozjan relies, is of no help to her; that case involved an administrator's failure to advise the claimant of the right (and requirement) of further administrative review. That

word "if" in its statement about Ms. Hozjan's right to bring a civil action once all administrative rights to review had been exhausted ("*If* your plan is governed by … ERISA") matters not a whit in this case, as that statement only reinforces the point that Ms. Hozjan was required to exhaust the administrative review process before any she could exercise any right to sue under ERISA. Even if Omaha's statement should have been unconditional, it did not cause Ms. Hozjan's failure to exhaust the administrative review process and therefore provides no basis to excuse her default.

\*   \*   \*

For the foregoing reasons, Omaha's motion to dismiss is granted. Repleading would not cure the complaint's deficiencies (and Ms. Hozjan has not sought leave to replead); accordingly, the complaint is dismissed with prejudice.

Dated: September 14, 2018

John J. Tharp, Jr.
United States District Judge

---

failure plainly prejudiced the claimant's ability to exhaust administrative remedies; here, by contrast, no prejudice resulted from any failure to adequately advise Ms. Hozjan of her right to bring a civil action after exhausting administrative procedures when she did not exhaust those procedures.